THE STATE OF IOWA, *ex rel.* RICE, *v.* THE COUNTY JUDGE OF MARSHALL COUNTY.

Where it is sought to compel a canvass of the votes cast at any county election, it is proper to direct the writ of *mandamus* to the county judge.

A board of canvassers of a county election, is not a board of such a nature, that no other can perform the duty ; nor does the dissolution of the board, render it impracticable that the canvass should be made.

Where a board of canvassers of a county election dissolves, without making the canvass as required by law, the act may still be done, by a

SUPREME COURT CASES—1858.     187

The State of Iowa, ex rel. Rice, v. The County Judge of Marshall County.

command to the county judge, to take to his assistance two proper persons.

The duty of the canvassers of an election, is not a judicial, but a ministerial act, in the performance of which, there is no discretion to be exercised.

A board of canvassers of an election, possesses no power or authority to judge of the validity of returns, or of votes.

The canvassers are only to receive the returns, and to count them, leaving all questions as to their validity, or deficiency, to another tribunal.

Where a board of canvassers of a county election, rejected the returns from three townships, because they did not show that the elective officers were sworn ; *Held*, That the board possessed no such power.

Proceedings under a writ of *mandamus*, do not, in all cases, determine the ultimate right of the parties.

Where a board of canvassers have rejected returns of the election, which they should have counted, no legal canvass has been made; and when a writ of *mandamus*, in such a case, commands the county judge to take to his assistance two justices of the peace, and re-canvass the votes, and in such re-canvass, to count the votes included in the rejected returns, it is not, in a proper legal sense, a command to *re-canvass*, but to do that which was before the duty of the board, and which they omitted to do.

An officer may be commanded by *mandamus*, to do a particular act in a particular way, where the manner of doing it, is of the essence of the act to be done, and where the way in which the act is to be performed is not discretionary.

Where an alternative writ of *mandamus*, directed to a county judge, commanding him to take to his assistance two justices of the peace, and canvass the returns of a certain election, recites the fact of an election, and all the proceedings leading thereto, and shows that the canvassers have neglected, or refused, to count all the returns of said election, the writ sufficiently shows that the canvassers are legally bound to do the act required.

Objections to matter which comes within the cognizance of the county judge, when ordering an election on a re-location of the county seat, and upon which he has adjudicated, cannot be set up in answer to an alternative writ of *mandamus*.

In a matter of public right, any citizen may be relator in an application for a writ of *mandamus*.

Where the object of a writ of *mandamus*, is to compel a canvass of the returns of an election, the defendant cannot allege fraud and bribery in the election, in answer to the writ. Questions of this character, may be proper subjects of examination in a proceeding adapted to test the legality and validity of the election, or the several steps leading to it, or of the law under which it was held ; but they do not come within the cognizance of the court, under proceedings by *mandamus*.

The State of Iowa, ex rel. Rice, v. The County Judge of Marshall County.

In a case of public duty, in which the act to be done is well known, and would have been performed if the officer did not intend not to do it, and where it belongs to no one to make a request, a formal demand of the officer, to perform the act, and a refusal on his part, need not be alleged or shown in an alternative writ of *mandamus*.

After judgment ordering a peremptory writ of *mandamus*, an appeal, with a bond as provided by law, will stay the proceeding, as in other cases.

Matters alleged in the answer to an alternative writ of *mandamus*, which go to the sufficiency of the information, cannot be considered in determining upon the sufficiency of the cause shown against complying with the mandate of the writ.

Where the district court, after awarding a peremptory writ of *mandamus*, ordered that the writ be stayed until the cause could be heard in the supreme court; *Held*, That unless an appeal was taken, and bond filed, in the manner provided by law, the ordering staying the writ, would be unavailing.

*Appeal from the Marshall District Court.*

SATURDAY, NOVEMBER 6.

Mandamus to the county judge of Marshall county, on the information of Wells S. Rice, requiring the said county judge, to take to his assistance two justices of the peace of said county, and re-canvass the votes cast at the April election, A. D. 1858, in said county, on the question of re-locating the county seat of said county, at the town of Marshall, in said county, and in such re-canvass to count the votes cast on said question, in the townships of Legrand, Greencastle, and Marion, in said county, according to the returns of said election from said townships, now on file in his office, and when so re-canvassed, that he declare the result in accordance with said vote, at the said April election. The information and writ, set forth all the facts relied upon, showing the right of the relator to the writ, and is supported by record evidence attached to, and made a part of, the information, from which it appears, that an election in relation to the re-location of the county seat of Marshall county, was held at the April election, 1858; that the town of Marshall received a majority of the votes cast

at such election; that the county canvassers in canvassing the returns of said election, threw out the returns from the townships of Marion, Greencastle, and Legrand, because it did not appear from the poll-books, that the judges and clerks were sworn, and thereby declared the votes to result in retaining the county seat at Marietta; that the judges and clerks of said townships subscribed the oath, as appears from said poll-books, but the jurat was not appended thereto; and that said judges and clerks were, in fact, sworn, before opening the polls.

A motion to quash the writ, having been overruled, the respondent answered, assigning twenty-seven reasons for not obeying the mandate of the writ. To this answer, the relator demurred, and also filed a motion to quash the answer or return, for substantially the same reasons. The court overruled the motion to quash, and sustained the demurrer. The defendant declined to answer further, and stood upon the demurrer. The relator moved for a peremptory writ, returnable at a given time, which the court refused, but ordered the writ, and then stayed the proceedings until after the cause could be heard in the supreme court. The defendant appeals from the ruling of the court sustaining the demurrer, and the plaintiff from the order staying the peremptory writ. The matters alleged in the answer, so far as material, appear in the opinion of the court.

*E. W. Eastman*, for the appellant.

I.   The court erred in not quashing the writ of *mandamus*.

1.   On trial of a demurrer, on a writ of *mandamus*, "the whole question of law, including that of the goodness of the writ of *mandamus* itself," is to be considered. Tap. on Mand., 375, 380, 338, 339; 2 Saund., 285, note (5); Bouv. Law Dic., Demurrer, 3.

2.   The writ itself is insufficient, for want of sufficient inducement. The writ does not show that there is any law or authority for the county judge to form a new board of

county canvassers, and re-canvass the returns of an election, after he has formed one board of county canvassers, as provided in section 271 of the Code. The writ does not show that it was the duty of the county judge, by virtue of his office, to do what was commanded, nor even that he had a legal right to do so. Tap. on Mand., 322; 12 Barbour, 221. The writ does not show that the defendant has been requested, and has refused, to do what the writ commands him to do. " The writ should expressly show, by averment, a demand and refusal." Tap. on Mand., 323, 283, 285; *Chance* v. *Temple*, 1 Iowa, 179. The writ does not show any cause for the suit being prosecuted in the name of the State, or that the relator has a right to the writ. Code, section 2183; Laws of 1857, ch. 86, sec. 2. The writ is for the private interest of Wells S..Rice, the relator and prosecutor in the name of the State. Can the relator thus avoid his liability for costs ? Tap. on Mand., 28, 29; 2 Iowa, 285, 286.

3.   The writ is not properly directed. The writ shows that there has been a board of " county canvassers formed, and that board was composed of William C. Smith, county judge; John W. Tripp, justice of the peace of Iowa township, in said county; and John 'Turner, a justice of the peace of Marietta township, in said county." The act complained of by the relator, which was the rejection of the returns from Legrand, Greencastle and Marion townships, was not the act of the county judge, as county judge, and it could not be his act as an individual. It must have been the act of at least two members of the board of county canvassers, and these two might have been, and so far as this court knows to the contrary, were the said two justices, in opposition to the county judge. It was not in the power of the county judge, as county judge, or as a member of the board of "county canvassers," to do the act complained of; neither is it in his power to change it. It was the act of the county canvassers. Code, secs. 271, 274; Laws of 1855, ch. 46, sec. 7; Tap. on Mand., 231;

12 Wend., 187.  " The writ must be directed to all those who are legally bound to execute it, and to them only." Tap. on Mand., 310, 313, 314 and 315.

4.   The act to be done is to re-canvass the votes cast at the April election, &c.   The county canvassers, as a body, is the only power known by the law to canvass the returns. When the act, the performance of which is commanded by the writ, is joint, and one party only refuses, and the others are willing, nevertheless, the writ must be directed against one or all.   Tap. on Mand., 314, 231.   This writ, therefore, should, if the design is to re-canvass the returns, be directed to " the county canvassers of the April election, 1858."

5. ` There is no pretence that the county judge refused to select two justices of the peace, and canvass the returns, nor that these county canvassers have refused to re-canvass the returns, or that they have been requested to do so. Tap. on Mand., 323.   The writ must be enforced in the terms in which it was issued, or not at all.   Tap. on Mand., 323.

On this last point, I wish to suggest to the court, that nothing can be required to be done by a writ of mandamus, except what the law expressly directs, or what is clearly implied by the law, or statute, that the defendant should do, and then only when there is no other remedy. Tap. on Mand., 9, 10.   There is no statute of this State, authorizing a re-canvass of the returns of any election.   The remedy provided by statute in all such cases, is to contest the election, which may be done by any elector of the county.   Code, section 339.   There is no express statute, authorising a contested election, in case of re-locating county seats, and there can be no pretence of an *implied* authority to re-canvass the votes in such a case, because such a thing is not known or allowed in any case whatever. The mandate of this writ, cannot, therefore, be legally obeyed, for there is no law, express or implied ; and it is hoped the court will not presume to make a law for the writ after it has issued.

6. Again: The writ requires the county judge to command two other persons to assist him in doing an act. Tap. on Mand., 314; 12 Wend., 221. The writ does not aver any legal authority to re-canvass the returns, which it commands to be done. The mandatory clause must be supported by, and not exceed, in legal value, the averment of title, grievance, &c., forming the inducement of the writ. Tap. on Mand., 326.

For these reasons, the writ itself is insufficient. Upon demurrer, "the court in giving judgment, will first dispose of the objections to the writ, for if they be bad, then the sufficiency or not of the return, is immaterial." Tap. on Mand., 326.

II. The district court erred in sustaining the demurrer.

1. If the writ is defective, then the demurrer should have been overruled, or the writ quashed, which would be the same in result.

2. It is competent for defendant to return as many causes to the whole writ, or distinct portions of it, as he pleases, and it is not necessary that every one of them should be good, but it is sufficient if one be good, provided the whole are not repugnant or inconsistent. Tap. on Mand., 373 274. Every good legal cause why the prosecution is not entitled to the writ, whether it arise from personal incapacity to sue it out, &c., or by reason of the absence of a legal right to that which he seeks, will alike form a good and valid return." Tap. on Mand., 358.

3. The defendant "may show cause by sworn answer, made in the same manner as an answer to a petition in a civil action, and issue may be made thereon, and tried accordingly." Code, section 2187; Tap. on Mand., 374. This return denies the statements in the writ, and if "issue" were "made thereon," it would have to be overcome by two witnesses. 3 Iowa, 162. And the case being submitted on demurrer, the return is taken as true. Tap. on Mand., 373, 404; 1 Iowa, 434.

4. The county canvassers are, by law, required to open

and examine the several returns, &c. This requirement carries with it, necessarily, the power and duty, to determine what is, and what is not, a "return." That act is a judicial act. The adding together the several amounts may properly be called a ministerial act. But to determine what is, and what is not, a legal return, is as much a judicial act, as to determine what is, or what is not, a note or bond. And that determination must be made, both in Iowa and Kansas, from the instrument itself, by "examining" it, and not from the wrapper upon it, or the man who delivered it. The law provides what a return shall be: 1. By declaring who shall be the judges and clerks of the election. Code, 246, 247, 248, 249, 250. 2. By declaring what is a poll-book. Code, sections 255, 249, 250. 3. By declaring what the return shall be, which includes all the foregoing, and more. Code, 267, 268. By this law, and by this alone, the county canvassers are to determine what is, and what is not, a return. By this law they did decide, that there were no legal returns from Legrand, Greencastle, and Marion townships. The plaintiff then asks the district court to decide judicially, upon the law and evidence, that those rejected poll-books were legal returns, and then, by *mandamus*, compel the county judge and county canvassers to abide by that *judicial* decision, because it has been reviewed and reversed by the district court. All the authorities are clear, that the court cannot, by *mandamus*, review or control the judicial decision of any tribunal. 20 Wend., 659, 660; 1 Ib., 300, 326; 18 Ib., 89; Tap. on Mand., 13, 176, 325; 12 Barbour, 452.

5. Neither the writ or information has shown any law or obligation, or any "duty resulting from an office or trust," binding upon the defendant to do what the writ requires, and the counsel has failed to show it. This return is good till that law is produced. The writ must show that the defendant has it in his power to do the act required. 12 Barbour, 220; 15 Ib., 617; Code, section 2179; Tap. on Mand., 10.

194     SUPREME COURT CASES—1858.

The State of Iowa, ex rel. Rice, v. The County Judge of Marshall County.

6. It is not only necessary that there should be a demand of defendant to do the act, and a refusal, but the writ must aver that it has been made. 1 Iowa, 188; 12 Barb., 220 ; Tap. on Mand., 282, 285, 323.

7. Substantial defects in the writ may be taken advantage of at any time before peremptory writ is ordered. 14 Barb., 52; Tap. on Mand., 380, 402.

8. The title of the relator to relief, must be clearly set forth in the writ. It is not enough to refer in the writ to the information, or affidavits on file on which the writ was granted. 10 Wend., 30; 15 Barb., 607; 2 Iowa, 285.

*W. Penn. Clarke*, (with whom were *H. C. Henderson* and *Wm. P. Hepburn*), for the appellee.

I. The demurrer was properly sustained, for the following reasons :

1. Said answer states conclusions of law, and not matters of fact, and does not traverse any material allegations in the writ. Tap. on Mand., 389, 400; Code, chap. 104; *The People* v. *Kilduf*, 15 Ill., 492.

2. The process of *mandamus* lies to compel public officers to proceed to perform those ministerial acts which are required by law. *Arberry* v. *Beavers*, 6 Texas, 457 ; *Railroad Company* v. *Clinton Co.*, 1 Ohio, (N. S.) 771 ; *Strong, Petitioner*, 20 Pick., 484; *Carpenter* v. *Bristol*, 21 Ib., 258; *The State* v. *The Justices*, Dudley (Geo.), 37; *The People* v. *Steele*, 2 Barb., 397.

3. Even courts may be compelled by *mandamus*, to perform ministerial acts. *Jared* v. *Hill*, 1 Blackf., 155; *Commonwealth* v. *Norfolk*, 5 Mass., 435.

4. In a matter of public right, any citizen may be a relator, in an application for a *mandamus*. *The People* v. *Collins*, 19 Wend., 56; *Pike Co.* v. *The People*, 11 Ill., 202; *Napier* v. *Poe*, 12 Georgia, 170.

5. Quo warranto and mandamus are dependant upon, and governed by, the same principles. *The People* v. *Van Slyck*, 4 Cowen, 297 : 2 *Esp. Dig.*, 343.

6. The county canvassers are but ministerial officers, and possess no power to determine the legal sufficiency of, or go behind, the returns. *The People* v. *Van Slyck*, 4 Cowen, 297; *United States ex rel.* v. *Com. of Dubuque Co.*, Morris, 31; *Bacon* v. *York Co. com.*, 26 Maine, 491; *State* v. *The Judge*, 13 Ala, .805; *Strong, Petitioner*, 20 Pick, 484; *ex parte Heath*, 3 Hill, 42; *The People* v. *Van Cleve*, 1 Manning, Mich., 362; *Mayo* v. *Freeland*, 10 Missouri, 629; *The People* v. *Cook*, 14 Barb., 259; *Brower* v. *O'Brien*, 2 Carter, 423; *The People* v. *Kilduff*, 15 Ill., 492; *Peoply* v. *Tisdale*, 1 Doug., 59.

7. The omission of an officer to take the oath required bs the statute, will. not invalidate an election held by him. *The People* v. *Cook*, 14 Barb., 259.

8. A person elected to an office, and entering upon ite duties, is an officer *de facto*, and his acts, as to third persons and the public, are valid. The township trustees are *ex officio* judges of the election, and their failure to take the oath, cannot invalidate the election. *Greenleaf* v. *Low*, 4 Denio, 168; *Weeks* v. *Ellis*, 2 Barb., 320; *The People* v. *Covert*, 1 Hill 674; *The People* v. *Hopson*, 1 Denio, 575; *The Matter of Directors &c. of M. & H. R. R. Co.*, 19 Wend., 135; *The People* v. *Cook*, 14 Barb. 259; *Smith* v. *State*, 14 Conn., 493; *Commonwealth* v. *Shaw*, 7 Metc., 52.

9. Irregularities in the manner of holding an election for county seat, will not be sufficient to overcome the wil. of the people, as expressed at the ballot box. *Clifton* v. *Cook*, 7 Ala., 114.

10. .To an information in the nature of a *quo warranto*l a plea of title to an office need only state the authority of holding the election—the holding of it—and that defendant received the greatest number of votes for the office. *The People* v. *Van Cleve*, 1 Mann., Mich., 362.

II. The answer shows no legal excuse for not obeying the writ. Even though the county canvassers may have rightfully thrown out the returns from the townships of Ma-

rion, Legrand and Greencastle, for the want of a jurat to the oaths of the judges and clerks, in a proceeding of this character, the only question is, which place had a majority of the legal votes cast. The very object of the writ, is to go behind the returns, and ascertain the will of the people, and effectuate it. It is the election, and not the canvass, which gives the right. *Clifton* v. *Cook*, 7 Ala. 114; *The People* v. *Cook*, 14 Barb. 259; *The People* v. *Vail*, 20 Wend. 12; *The People* v. *Ferguson*, 8 Cowen, 102; *The People* v. *Jones*, 17 Wend., 81; *The People* v. *Van Cleve*, 1 Manning, 362; *The People v. Kilduff*, 15 Ill., 492; *The People* v. *Seaman*, 5 Denio, 409; *Ellis* v. *Com. of Bristol*, 2 Gray, 370; *Strong, Petitioner*, 20 Pick, 484.

III. The answer is evasive—neither admits nor denies the matter stated in the bill. In such a case, a peremptory mandamus is awarded. *The State* v. *City of Cincinnati*, 19 Ohio, 178; *In, the Matter of the Trustees, &c.*, 1 Barb., 34.

IV. An officer cannot allege his own default, to excuse himself for not performing an act enjoined upon him by law. The case of *The People* v. *The Supervisors of Greene*, 12 Barb., 217, on which the appellant relies, is substantially overruled by *The People* v. *The Supervisors of Shenango*, 4 Selden, 317. See also *Rice & Wait* v. *Harned*, 1 Iowa, 473; *Chance* v. *Temple*, Ib., 179.

V. The charges of fraud, set up in sections 25, 26 and 27 of the answer, even if sufficiently specific, and even if proved to be true, afford no reason why this county judge, with the canvassers he may select, should not discharge their duty, and canvass all the returns in his office of the said April election. Neither he nor his associates could investigate the alleged fraud, or know officially that such frauds existed. If the election was vitiated by fraud, the parties injured have a remedy.

VI. Had the court below power to stay the proceedings? The defendant was in default—he had failed to show any legal reason why he should not obey the command of the

alternative writ—he was standing in contempt of the court, and disregarding a duty imposed not by the court, but by the law itself. In such a case, the statute expressly provides, that the peremptory mandamus shall issue forthwith. Code, sec. 2188. The statute makes no provisions for staying such proceeding. Section 2186, provides that the mode of obtaining the writ, the service and proof thereof, and the return and enforcement of obedience thereto, must be in the same manner as in case of the writ of certiorari, but the mandamus act provides for no appeal, or stay of proceedings, as the statute regulating the writ of certiorari does. The case of *The People* v. *Steele,* 2 Barb., 554, it being analagous to the case at bar. The statute of New York, under which the proceedings were had, provided that where the return to the alternative writ, was insufficient, the peremptory shall issue without delay. The case was this : At a special term of the supreme court, an alternative mandamus was issued to defendants, trustees, &c., commanding them to admit the relator to the use of the pulpit and altar of a certain church, as minister, &c. The defendants answered. The answer was held insufficient, and a peremptory writ issued. Immediately on ordering the writ (as in the case at bar), the Judge (at Chambers, *ex parte*) ordered a stay of proceedings on the part of the relator, to enable the defendants to apply for relief in the supreme court. In their opinion, the court say : " As the special term has power to issue a peremptory mandamus; as the statute directs that it shall issue without delay ; and as there is no power, when the court have awarded it, to stay proceedings upon it, all the orders to that effect in this case must be vacated, and the writ obeyed." This is the only case I have found on the point, and the statute under which it was made, is so identical in language with our own, that I deem it decisive of the question.

WOODWARD, J.—By the statute of 1854–5, chap. 46, (Acts of 1855, 71), it was provided, that when the citizens

of any county desired a re-location of the county seat, the major part of the voters of the county may petition the county judge to order an election for that purpose, naming in their petition the place at which they desire it located. The election being held, and the returns made to the county judge, he is to take to his aid two justices of the peace, and they are to canvass the election, and declare the result. The election in question in this case, was held under, and in pursuance of, this statute.

The return of the defendant assigns twenty-seven causes why he has not obeyed the alternative writ—several of which may be classified as objections to the validity of the law relating to the re-location of county seats, and to the validity of the election which was held under it, and other causes ; but there are two or three to which we will refer particularly.

*First.* That the defendant has already canvassed the votes as required by law, and declared the result ; and that the board of canvassers no longer exists, and there is no law under which he can re-organize it.

*Second.* That the poll-books, or abstracts, of the said three townships, were rejected because they were not in accordance with the requirements of the statute.

*Fifteenth.* That the writ is directed to the wrong person.

*Sixteenth.* That the defendant has no authority to call to his assistance other persons, and re-canvass the vote.

*Twentieth.* That the writ requires the defendant to do a particular act in a particular way.

*Twenty-first.* That it commands him to call others to his assistance, and requires them to do a judicial act in a particular way.

*Twenty-second.* That the writ is directed to the county judge, and requires other persons, not now parties, to act.

*Twenty-fourth.* That the writ does not show that the canvassers are legally bound to do the act required, nor that they have been requested and have refused.

Without adverting specifically to each objection taken, we will point out the views entertained by us in relation to the proceeding.

The writ is directed to the proper person—that is, the county judge. One conclusive reason against directing it to the two justices, with him, is that thay may have gone out of office before the writ issues. And again : they are not a board of such a nature, that no other can perform the duty. The county judge is the only permanent member, and he calls to his assistance such other two, being justices, as he sees fit. And for the same reason, they are not such a board that their dissolution renders it impracticable that the duty should be performed. If it has not been done, it may still be done, by a command to the judge to take to his assistance two proper persons.

Another point is, that the duty to be performed is not a judicial one. It is ministerial. Neither is there, properly speaking, a discretion to be exercised. In respect to this, there is a wide-spread error among the civil officers, and among the people generally. It is not correct to suppose that a board of canvassers, such as the county board in the present instance, possesses the power or authority to judge of the validity of returns, or of votes. This duty, or power, belongs to that tribunal which is appointed by law for the ultimate trial of contested elections, or to a court before which the case may be brought in any manner recognized by law. The canvassers are only to receive the returns and to count them, leaving all questions of their sufficiency, or validity, to another tribunal. *The People* v. *Cook*, 4 Selden, 67, 89; *Same* v. *Same*, 14 Barb., 285 ; *The People* v. *Van Slyck*, 4 Cow., 297; *Ex parte Heath*, 3 Hill, 42 ; *Bacon* v. *York Co. Com'rs*, 26 Maine, 491 ; *Opinion of Court*, 25 Ib., 567; *Brower* v. *O'Brien*, 2 Carter, 423 ; *The People* v. *Kilduff*, 15 Ill., 392, and cases therein cited.

It is true that extreme cases may be supposed, where the paper may not bear sufficient marks to be known as an

election return. Such a case stands by itself. The foregoing remarks, however, apply to the cases which usually occur, and where there is enough to show what it is intended to be, but where the paper only wants some of the appointed marks of authenticity, or of completeness. Thus we might instance, that if the supposed returns are not signed by any one, they have not the evidence of being returns; but if they do not show that the officers were sworn, this goes to their sufficiency only. The canvassers must judge whether they are the returns from such a township, or such a county, but when known to be such, they are not to determine upon their sufficiency. This belongs to another tribunal, empowered to adjudge upon the legality of the case ultimately.

In the present case, the canvassers rejected the returns from three townships, because they did not show that the elective officers were sworn. This was not within their province, and was an error. Even this court does not, in this case, determine upon the sufficiency of these returns ; it only decides that the canvassers should count them, leaving the other questions to such tribunal as may have cognizance of the case, in the event that the election should be contested, or otherwise tried.

The proceeding under the writ of mandamus, does not, in all cases, determine the ultimate right. Thus, it has been applied, where it could determine but one step in the progress of inquiry, and when it could not finally settle the controversy, but it might still be necessary to resort to *quo warranto*, an injunction, or a contest of election under the statute. *Ex parte Strong*, 20 Pick., 496 ; *Brower* v. *O'Brien*, 2 Carter, 423 ; *The People* v. *Kilduff*, 15 Ill., 492. In the case of Strong, above cited, the court intimated that the party might be obliged to resort to a *quo warranto;* and in *Brower* v. *O'Brien*, they say that the writ confers no right, but merely places the party in possession, so as to enable him to assert his right, which, in some cases, he could not otherwise do. And farther, there may possibly

be cases, in which this writ would not be applicable for any purpose, or in any degree.

It has been remarked that the duty of the canvassers, is ministerial in its nature; and such it is in the main, but this is not true, universally. There are points in the range of their duty, where it partakes of the judicial—or, at least, of the discretionary—character. *The People* v. *Cook*, 14 Barb., 294. But so far as the present case bears upon them, they are ministerial.

The next subject of examination, is the answer, that the duty had already been performed. Inasmuch as the canvassers have rejected the returns from three of the townships, which they should have counted, it is legally true, that the duty has not been discharged; and when the writ now commands, it is not, in a proper legal sense, to re-canvass, but to canvass, the returns of that election. It is to do that which was before their duty, but which they omitted. What has been done, is as if it had not been done, and the judge is now commanded to proceed as if no former steps had been taken.

To say that the judge is commanded to do a particular act in a particular way, is not a strictly correct use of language. He is commanded to do something which he has omitted to do, which is the very object of the writ. But even as the object is stated, it is not necessarily wrong; for the manner may be of the essence, and the mandate may be correct, if the manner is not a subject of discretion.

To the first part of the twenty-fourth objection, we answer, in view of what has been said, that the writ does show that the canvassers are legally bound to do the act required. This duty is a result of the facts stated, and the law applied to them.

The objections to the writ, presented in the answer, are so numerous, that it is impossible, within reasonable limits, to respond to them severally, and we would say, generally, that the answer is partly an answer to the information, and so far, requires no attention. A portion of the

objections go to matters which fell within the cognizance of the county judge, in ordering the election; and he having acted, they do not remain subjects of examination; and others are not pertinent to the present inquiry. Others, still, are not sufficient to invalidate the election, even though well founded as matters of fact.

In a matter of public right, any citizen may be a relator in an application for a *mandamus*. *The People* v. *Collins*, 19 Wend., 56; *Pike County* v. *The People*, 11 Ill., 202; *Napier* v. *Poe*, 12 Georgia, 170.

The allegations of fraud and bribery in the election, do not come within the cognizance of the court, under this proceeding. These, and other objections, might be proper subjects of examination, in a subsequent proceeding adapted to test the legality and validity of the election, or the several steps leading to it, or of the law under which it was held. The present one, is only to arrive at the result of the election which has been held.

The remarks before made, cover those objections which have an important bearing on the present matter. But there remains to be noticed the objection, that the writ does not show that the defendant was requested to do or perform the act, and that he has refused. It is stated that a demand must be made, and a refusal thereto. Tap. on Mand., 382; *Chance* v. *Temple*, 1 Iowa, 189. This is true as the general rule, and it is more especially true, where the proceeding has relation to private rights or interests, as will be observed by the subjects treated in Tap. on Mand., 84, 162, 163, marginal. But it is manifest that there are cases affecting public officers, or duties, where the idea of a literal demand and refusal, does not have place, there being no one particularly empowered to demand, as it does not affect individual interests; but the law—the official duty—is in the place of it, and omission or neglect, is refusal. And especially is this true, when the respondent has done an act which he calls a performance, but which the law says is not such.

The State of Iowa v. Chovin.

The refusal is not necessarily a literal one. Tapping says it must be either " in direct terms, or by conduct from which a refusal can be conclusively implied." (Tap., 283); and on 285, he says : " it is not necessary that the word *refuse*, or any equivalent of it, should be used, but there should be enough, from the whole of the facts, to show to the court that, for some improper reason, compliance is withheld, and a distinct determination not to do what is required;" and instances are given in which acts have been construed to amount to a refusal.

We cannot bring ourselves to think, that in a case of public duty, like that at bar, in which the act to be done is well known, and would have been performed already, if the party did not intend not to do it ; and where it belongs to no one to request it, but it does belong to the defendant to do it, a formal demand or refusal is necessary. It is clear that duty makes the demand, and omission is the refusal.

Another point remains. The court rendered judgment that a peremptory writ issue, but ordered that it be stayed, that the cause might be taken to this court. From this order, the complainant appealed. The matter is of no practical importance in the present cause, and does not call for a formal disposition ; but it may be remarked that no reason is perceived why the appeal, with a bond, as provided by law, would not stay the proceedings, as in other cases ; and in that case, the order would be unnecessary, whilst without the bond, the order would be unavailing. *The People* v. *Steele*, 2 Barb., 554.

The judgment of the district court, in awarding a peremptory *mandamus*, is affirmed, and a writ of *procedendo* will issue accordingly.