BRADFIELD v. WART *et al.*

BROOKS v. WART *et al.*

1. **Election: OF SUPERVISORS.** In the election of additional supervisors under the statute increasing the number thereof (§ 7, ch. 148, Laws of 1870), it is not necessary that the ballots should have "additional supervisors" thereon, or any other designation different from those ordinarily cast for supervisor.

2. **Mandamus: AGAINST ELECTION CANVASSERS.** Mandamus is the appropriate remedy to compel the board of supervisors, acting as canvassers of election returns, to declare elected and so certify the persons receiving the highest number of votes cast.

*Appeal from Buena Vista Circuit Court.*

WEDNESDAY, APRIL 9.

THESE two actions arise out of the same facts and were submitted on the same abstract and arguments.

The plaintiffs filed their several petitions against the defendants as the board of county canvassers of the election returns of 1871. It is alleged in substance that at the general election in 1870 the electors of the county adopted the proposition, which had been duly submitted to them, to increase the number of county supervisors from three to five; that at the general election in 1871 these plaintiffs were respectively candidates for the office of supervisor; that D. B. Harrison was then a member of the board of supervisors; that his term of office expired January 1, 1872; that at said election in 1871, said Harrison was a candidate for re-election to said office; that two different forms of tickets were used and voted at said election as follows:

1. *For Supervisors.*

D. B. HARRISON,
A. BRADFIELD,
L. C. HADDEN.

2. *For Supervisor.*

WILLIAM BROOKS, of Brooks.

*For Additional Supervisors.*

ALFRED WINTERS, of Nokomis.

ALFRED HERRICK, of Poland.

It is alleged that all these persons were eligible to the office of supervisor and that no two of them were residents of the same township; that due proclamation was made by the sheriff prior to the election; that the votes cast at said election and so found by the board of canvassers were as follows:

"For D. B. Harrison, for supervisor, two hundred and twenty-seven votes.

"For A. Bradfield, for supervisor, two hundred and seventeen votes.

"For L. C. Hadden, for supervisor, one hundred and ninety votes.

"For C. W. Garbison, for supervisor, twenty-five votes.

"For J. M. Russell, for supervisor, thirty-six votes.

"For William Brooks, for supervisor, two hundred and two votes.

"For A. Winters, for supervisor, twenty-eight votes.

"For A. Herrick, for supervisor, twenty votes.

"For A. Winters, for *additional* supervisor, one hundred and twenty-six votes.

"For A. Herrick, for *additional* supervisor, one hundred and twenty-four votes.

"For L. C. Hadden, for *additional* supervisor, two votes."

It is further alleged that these were all the votes cast at said election; that on the 16th day of October, 1871, after the returns had been canvassed, the said board declared D. B. Harrison duly elected to the office of supervisor, having received the highest number of votes cast at said election; that the plaintiff, Bradfield, received the next highest number of votes for supervisor at said election, to wit: 217 votes; that plaintiff, William Brooks, received the next highest number of

votes for supervisor, to wit : 202 votes, and that the defendants as the board of canvassers so found and returned ; yet said board neglected and refused to declare the plaintiffs elected supervisors, and refused to so certify, but illegally and fraudulently declared A. Winters and Alfred Herrick elected additional supervisors, and certified to their election upon the returns and abstracts made by them. It is averred that due demand was made upon defendants to declare the respective plaintiffs elected supervisors, and that they have refused to do so. A peremptory writ of mandamus is prayed to compel defendants to declare plaintiffs elected and certify accordingly.

The petition is duly verified.

Defendants demurred, which being sustained, plaintiffs respectively appeal.

*Isaac Cook* and *N. M. Hubbard* for the appellants.

*Galusha Parsons* for the appellees.

MILLER, J.— Although thirty-seven causes are stated in the demurrer, two questions only are involved : 1. Were the plaintiffs elected to the office for which they were voted ? 2. Is mandamus their proper remedy ?

1. ELECTION: of supervisors.

I. It is not controverted that D. B. Harrison received the highest number of votes and was properly declared·elected to the office of supervisor as his own successor. It is conceded also that the plaintiff Bradfield received the next highest number of votes to Harrison, for the office of supervisor, and that the plaintiff Brooks received, for the same office, the next highest number of votes to Bradfield, the latter receiving 217 votes, and Brooks receiving 202 votes, while Winters and Herrick, who were declared elected, received, the former 154 votes, and the latter 144 votes. This action of the board of canvassers is attempted to be justified because Winters and Herrick received the highest number of votes for "*additional* supervisors."

The seventh section of chapter 148, Laws of 1870, provides,

that "The board of supervisors of any county may submit to the qualified voters of the county, at any regular election, the question: ' Shall the number of supervisors be increased to five or seven ?' as the board shall elect, in submitting the question. If the majority of the votes cast shall be for the increase of the number, then, at the next ensuing election for a supervisor, the requisite additional supervisors shall be elected, whose terms of office shall be determined by lot, in such manner that one-half the additional members shall hold their office for three years, and one-half for two years."

It was under this provision that three supervisors were to be elected in the county of Buena Vista at the general election in 1871. We find no requirement in the statute that the tickets shall be different, where there is an increase of supervisors, and three or five are to be elected instead of one when there is no increase determined upon. In case of increase, as in this case, an additional *number* of supervisors are to be elected ; but the statute does not require, either expressly or by clear implication, that the ballots shall contain any peculiar or other designation than that of supervisor. It is urged by appellee that such designation is necessary so that it can be properly determined which two out of the three elected shall draw lots, as required by the statute. So far as this case is concerned no difficulty is presented in this respect. The pleadings concede that Harrison was duly declared elected as his own successor, so that the two other persons elected will draw lots under the statute without reference to any designation on the ballots.

But it is sufficient that the statute does not require any special designation upon the ballots cast for the additional supervisors, any more than it requires such designation upon the ballots cast for the successor of the out-going supervisor; and there is as much propriety in requiring it in the latter case as in the former.

The plaintiffs were clearly elected and should have been so declared by the defendants and so certified on the returns and abstracts.

II. Have the plaintiffs adopted the proper remedy ?

The defendants, when acting as a board of canvassers of an election, act ministerially. Their duties are not judicial. They must perform the duties prescribed by law and have no discretion. *The State ex rel. Rice* v. *The County Judge of Marshall Co.*, 7 Iowa, 186. The statute required them to receive, open and examine the returns, and make abstracts, stating the number of ballots cast in the county for each office, the name each person voted for, and the number of votes given to each person for each different office. Rev., § 506. And it is made their duty to declare the person having the greatest number of votes for any office to be elected to such office. Id. 508. And certify such declaration upon the abstract of votes made by them. Id. 509. The performance of these acts the law specially enjoins on the board of canvassers as a duty resulting from their office. For a refusal to perform any of these duties mandamus is the appropriate remedy. Rev., § 3761; *Bryan* v. *Cattell*, 15 Iowa, 538, and cases cited; *Clark* v. *Independent School District of Muscatine*, 24 id. 266; *Prescott* v. *Gonser*, 34 id. 175; *Brown* v. *Crego*, 32 id. 498.

**2. MANDAMUS: against election canvassers.**

It is not only the appropriate remedy to compel the delinquent board to perform the duties devolved upon them by the law, but it is the only remedy the law gives to accomplish this end. It is insisted, however, that the plaintiffs may, notwithstanding the official delinquency of the defendants, proceed, under chapter 37 of the Revision, to contest with the incumbents their rights to the offices in controversy, and that therefore mandamus will not lie. The petition shows that the defendants have refused to perform certain acts which the law specially enjoins upon them as a duty resulting from their official station. We have seen that for this breach of duty mandamus is the only plain, speedy and adequate remedy. The law gives this remedy to the parties aggrieved. They have a legal and perfect right to compel a performance of the acts which the defendants otherwise refuse to do. This can be

accomplished in no other manner than by mandamus. Rev., § 3761. The relief sought is against the board of canvassers, and there is no other remedy given against *them* for the wrongs of which plaintiffs complain. That the action by mandamus may not determine the ultimate rights of the plaintiffs as between them and the persons declared elected by the board is no sufficient reason for refusing the writ. *The State ex rel.* v. *The County Judge of Marshall Co., supra ;* see also *Preston* v. *Gonser, supra.* Nor are the persons declared elected by the board necessary or even proper parties to this proceeding. This action, as we have seen, is one brought against the defendants as a board of canvassers, for an alleged breach of official duty, whereby the plaintiffs are aggrieved, so that the defendants sued are the only proper parties defendant.

The demurrer should have been overruled. For the error in sustaining it the judgment is

Reversed.